**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES ECKERT,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ATLANTIC COUNTY JUSTICE FACILITY,<br>et al.,<br><br>　　　　　　Defendants. | Civil Action No. 21-5244 (KMW) (MJS)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

This matter comes before the Court on Defendants' motion for summary judgment. (ECF No. 74.) Plaintiff filed a response to the motion (ECF No. 81), to which Defendants replied. (ECF No. 84.) For the following reasons Defendants motion for summary judgment shall be denied.

**I.　BACKGROUND**

At the time that the incidents which gave rise to Plaintiff's complaint, he was detained in the Atlantic County Justice Facility for, *inter alia*, failing to appear for Drug Court. (ECF No. 74 at 10; ECF No. 81-1 at 1.) On July 31, 2020, while incarcerated in the jail, Plaintiff was moved to the admissions area of the jail for medical observation for suspected seizures. (ECF No. 74 at 11; ECF No. 81-1 at 3.) While on the phone in the admissions area of the jail that day, Plaintiff saw his then girlfriend, Tara Lynn Wilson, enter the jail to be booked on unrelated charges. (ECF No. 74-4 at 9.) Plaintiff saw her, but was not permitted by staff to speak with her. (*Id.* at 10.) While being admitted into the jail, Wilson used the restroom. (ECF No. 74-5 at 5.) Sometime later, while

in the admissions area, Plaintiff also used the restroom. (*Id.*) Officer Dear reported seeing Plaintiff in the restroom acting strangely and seeming to place something in his clothes. (*Id.*) Dear suspected Plaintiff had contraband and told him he needed to be strip searched. (*Id.*; ECF No. 74-4 at 10.) It is undisputed that, during that search, money was found in Plaintiff's sock during the strip search. (ECF No. 74-4 at 10; ECF No. 74-5 at 5.) Plaintiff contends that the money had been in his possession the entire time he was in the jail, while Defendants contend it was left for him in the bathroom by Wilson. (ECF No. 74-4 at 10; ECF No. 74-5 at 5.)

Dear and Plaintiff dispute exactly what occurred at the end of the search, with Dear asserting that Plaintiff was attempting to dispose of or hide the money while removing his socks, while Plaintiff instead asserts that the money merely fell out while removing his sock. (ECF No. 74-4 at 10; ECF No. 74-5 at 5.) During the resulting scuffle over the money, Dear contends that Plaintiff struck him in the chest with his elbow. (ECF No. 74-5 at 5.) Eckert then struck Plaintiff in the face with a closed fist, and Plaintiff fell to the ground. (*Id.*) Plaintiff testified at his deposition that Dear thereafter punched and kicked him multiple times, rendering him unconscious. (ECF No. 74-4 at 10-12.) Dear instead testified that he struck Plaintiff only once, that Plaintiff fell but was not unconscious, and that was the end of the incident. (ECF No. 74-6 at 12.) Dear then called for help, and Plaintiff was taken to a secure area and seen by medical staff. (*Id.*) Plaintiff was charged with multiple disciplinary infractions, including assaulting Dear, possession of contraband, refusing to obey a staff order, and disruptive conduct. (ECF No. 74-5 at 5.) Plaintiff was ultimately adjudicated guilty of those infractions. (ECF No. 74-8.) Plaintiff's medical examination indicated that the blow had caused a "complex continued left maxillofacial fracture involving the anterior maxillary sinus wall, posterior maxillary sinus wall, orbital floor, and lateral orbital wall and zygomatic arch," which required surgery and the implanting of titanium plates to repair. (ECF No. 74-11 at 5-6; ECF No. 74-12 at 1.)

## II.     LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

3

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

### III. DISCUSSION

Defendants first argue that they are entitled to summary judgment as to Plaintiff's excessive force claims as the force used was "*de minimis*" and not in violation of the Eighth Amendment. The Eighth Amendment excessive force standard, however, applies only to uses of force against convicted prisoners, *see, e.g., Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021), a point Defendants realized in their reply, wherein they instead argue that the use of force was reasonable and thus not violative of Plaintiff's rights under the Fourth Amendment, which Defendants contend applies because the in-jail strip search Plaintiff underwent was akin to an arrest. The Fourth Amendment's objective standard, however, applies only to uses of force in the context of arrests, investigatory stops, or other seizures against non-prisoners. *Id.* As the Supreme Court has clearly established, the use of force against a pre-trial detainee or other non-convict detained prisoner is instead evaluated under the Fourteenth Amendment's protections. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015); *Jacobs*, 8 F.4th at 194. As Plaintiff clearly fell into this category at the time of the incidents at question as he had been placed in jail for a drug court violation but was not serving a sentence for a conviction or violation of probation or parole at the time in question, Plaintiff's excessive force claim arises out of the Fourteenth Amendment, and Defendants' arguments must be evaluated under that rubric.

Under the Fourteenth Amendment, the central question is whether the force which the defendant applied to the plaintiff purposely or knowingly was "objectively unreasonable."

4

*Kingsley*, 576 U.S. at 396-97. Courts "cannot apply this standard mechanically" and the determination of objective reasonableness must turn on the "facts and circumstances of each particular case," with reasonableness being determined from the perspective of a reasonable officer on the scene taking into account what was known to the defendants at the time rather than what may be apparent in hindsight. *Id.* at 397; *see also Jacobs*, 8 F.4th at 194-95. A determination as to reasonableness will therefore require consideration of "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Jacobs*, 8 F.4th at 194-95 (quoting *Kingsley*, 576 U.S. at 397).

While it is certainly true that not every push or shove of an inmate will warrant consideration by a court of law and truly *de minimis* uses of force will not give rise to liability, *see Jacobs*, 8 F.4th at 195 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)), the force used in this instance can hardly be characterized as *de minimis*. Even if a jury were to credit the officer's version of events in this matter over that of Plaintiff, the record is still clear that the officer struck Plaintiff with a closed fist in the eye with sufficient force to cause a significant fracture of the bones of Plaintiff's eye socket, requiring surgery and titanium implants to repair. That is no minor contact and Defendants' contention that such was *de minimis* is not a reasonable interpretation of the facts of this matter. Indeed, were a jury instead to credit Plaintiff's version of events and find that Dear struck Plaintiff a number of times even after he hit the ground and was in and out of consciousness, clearly the jury could find the force used was objectively unreasonable and therefore excessive. As this Court must look at the facts of this matter in the light most favorable to Plaintiff for the purposes of this motion, this Court must conclude that, giving the Plaintiff the benefit of reasonable inferences, a jury could find that Dear's actions involved a use of force

5

beyond that which was reasonable under the circumstances, especially in light of Plaintiff's testimony that multiple blows were used even after he was incapacitated. While a reasonable officer at the scene who was either purposefully or accidentally struck in the chest, as Dear testified he was, could well have concluded that a single blow was warranted to secure Plaintiff and prevent him from using the potentially dangerous contraband against the officer. Even considering just the single blow which indisputably occurred, however, if one were to consider the facts in a light favorable to Plaintiff, it is still possible to conclude that the degree of force used in that single strike – sufficient not only to knock Plaintiff down but significantly injure his eye socket to the extent of requiring surgery – may exceed the amount of force reasonably necessary to secure the situation, especially where it appeared to the officer that the Plaintiff was attempting to dispose rather than make use of the contraband as Officer Dear's testimony and report suggests. Thus, even considering only that single blow, a reasonable jury could find that the force used was objectively unreasonable, and find in favor of Plaintiff, and summary judgment is therefore not warranted.

Defendants next argue that Plaintiff should be constrained from basing his claims on any facts that are contrary to his disciplinary adjudications for striking an officer, refusing to obey an order, and possessing contraband. Defendants base this argument on the doctrine first announced by the Supreme Court in *Heck v. Humphries*, 512 U.S. 477 (1994.) Under Heck, a federal civil rights action "will not lie when a state prisoner challenges the fact or duration of his confinement," seeks the shortening of his term of imprisonment, or raises a claim the success of which would undermine the validity of his imprisonment or its length. *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005). Thus, absent the prior invalidation of a jail disciplinary proceeding affecting the length of a prisoner's term of imprisonment, a state prisoner's civil rights suit "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the

6

prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of [his] confinement or its duration." *Id.* at 81-82. Here, Plaintiff asserts that the force against him was excessive, a finding which a reasonable juror could make for the reasons expressed above even assuming that Plaintiff did have contraband, did resist Dear's orders, and did strike Dear with his elbow during the scuffle at the end of the strip search. Thus, *Heck* in no way bars Plaintiff's claim.[1] *Heck* likewise does not serve as a basis to preclude or limit Plaintiff's testimony as the "*Heck* doctrine . . . has never clearly been held to provide a basis for issue preclusion." *Altagracia v. Viola*, No. 21-13017, 2022 WL 17417112, at *4 (D.N.J. Dec. 5, 2022).

Defendants next argue that they are entitled to qualified immunity as to Plaintiff's excessive force claims. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)). In determining whether immunity applies, courts use a two-pronged test: "a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the

---

[1] Although part of the punishment related to these infractions involved a loss of jail credits, Plaintiff was not serving a sentence, and it does not appear that one arose from this incident to which any such credits could or did apply. It thus doesn't appear that the credits actually did affect the fact or length of Plaintiff's term of imprisonment, and *Heck* may well also be inapplicable for that reason.

time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

As this Court explained above, a reasonable juror could conclude from the facts at hand that the force used against Plaintiff was unreasonable, and that Plaintiff's Fourteenth Amendment rights had been violated. The remaining question, then, is whether Plaintiff's claim was "clearly established" as of late July 2020. For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate.*" *Id.* at 638. With the exception of cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. New Jersey State Pol.*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and, when so defined, the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70. For the purposes of this analysis, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals" in effect at the time of the conduct in question. *Id.* at 170.

That an officer may not use force against inmates which is divorced from legitimate penological purposes has long been clearly established. *Jacobs*, 8 F. 4th at 197; *see also Kingsley*, 576 U.S. at 396-97; *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). It has likewise long been clear from a wide array of caselaw that an officer may not use force against a prisoner who has been incapacitated. *Jacobs*, 8 F.4th at 197 (collecting cases predating this incident). Looking at the events of this matter in the light most favorable to Plaintiff, a jury which credited Plaintiff could find that he was struck by Defendant Dear while attempting

8

to cooperate with a strip search for contraband, and was then struck after being incapacitated and knocked to the ground, resulting in severe injuries to his eye. As the Third Circuit made clear in *Jacobs*, that such an incident was contrary to the law had been clearly established prior to February 2015, and thus well before the events at issue in this matter. 8 F.4th at 191, 197. Plaintiff's claim was thus clearly established, and Defendants are not entitled to qualified immunity on Plaintiff's excessive force claims.

In their final argument, Defendants contend that Plaintiff should be prohibited from obtaining non-economic damages for his state law claims as such damages are prohibited under the N.J. Tort Claims Act in the absence of permanent injuries where medical treatment expenses exceed $3600. *See N.J. Stat. Ann.* § 59:9-2(d). Under that statute, a plaintiff seeking to recover under state law for pain and suffering must show "an objective permanent injury" and "a permanent loss of bodily function that is substantial." *Nieves v. Office of the Public Defender*, 241 N.J. 567, 581 (2020); *Brooks v. Odom*, 150 N.J. 395, 406 (1997). The New Jersey Supreme Court has held that, where an injury results in serious injury that requires the implanting of medical devices such as pins, wires, or plates to restore relatively normal functioning, such an injury still qualifies both as permanent and having caused a permanent loss of bodily function which is substantial, notwithstanding that the medical implants may have restored the injured party to relatively normal functioning. *Gilhooley v. Cnty. Of Union*, 164 N.J. 533, 541-42 (2000). In this case, the repair of Plaintiff's eye required the implantation of titanium plates to hold his eye socket together and restore relatively normal functioning. Without those plates, Plaintiff's eye socket would likely not have healed properly and he would have had a permanent loss of proper functioning. His injuries thus clearly fall within the four walls of *Gilhooley*, and he is not barred from recovery under the statute for non-economic damages. Therefore, Defendants' motion for summary judgment is denied.

9

## IV.   CONCLUSION

In conclusion, Defendants' motion for summary judgment (ECF No. 74) is denied. An appropriate order follows.

                                                                                     _____
                                                                                     Hon. Karen M. Williams,
                                                                                     United States District Judge